Michael A. Sirignano (MS 5263)
Barry I. Levy (BL 2190)
Ryan Goldberg (RG 7570)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs, Government Employees Insurance*
*Co., GEICO Indemnity Co., GEICO General Insurance*
*Company and GEICO Casualty Co.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO GENERAL                    Docket No.:
INSURANCE COMPANY and GEICO CASUALTY CO.,

                            Plaintiffs,

                                                          **COMPLAINT**

            -against-

MANI USHYAROV, D.O., DIAGNOSTIC PLUS
MEDICAL, PC, YAN MOSHE a/k/a YAN LEVIYEV,
HUMBERTO ROMERO, YELLOWSTONE MEDICAL
MANAGEMENT, INC.,

                            Defendants.
------------------------------------------------------------------------X

        Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO

General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs"), as

and for their Complaint against the Defendants, hereby allege as follows:

## NATURE OF THE ACTION

        1.      This action seeks a recovery of monies paid and a declaration that GEICO is not

legally obligated to pay Defendant, Diagnostic Plus Medical, P.C. ("Diagnostic Plus"),

approximately One Million Five Hundred Thousand Dollars ($1,500,000.00) in pending claims

for radiology services (i.e., magnetic resonance imaging ("MRI") studies) that allegedly were

rendered for diagnostic purposes to individuals who were involved in automobile accidents and eligible for insurance coverage under GEICO's insurance policies ("Insureds"), because:

(i)    Diagnostic Plus was fraudulently incorporated and owned and controlled by non-medical professionals and, therefore, was never eligible to recover No-Fault benefits;

(ii)    Diagnostic Plus is a radiology practice owned "on paper" by a physician whose field of medicine is internal medicine, who does not practice radiology, and who has never engaged in the practice of medicine through Diagnostic Plus and, therefore, was never eligible to recover No-Fault benefits;

(iii)    Diagnostic Plus billed GEICO for radiology services that were performed by radiologists who were not employees of Diagnostic Plus, but rather independent contractors of Diagnostic Plus having no employment relationship to Diagnostic Plus and, therefore, was never eligible to recover No-Fault benefits for these services; and

(iv)    Diagnostic Plus engaged in unlawful fee splitting with non-medical professionals and, therefore, was never eligible to recover No-Fault benefits.

2.    In addition to a declaration that it is not legally obligated to pay Diagnostic Plus, GEICO also seeks to recover more than Six Hundred Fifty Three Thousand Dollars ($653,000.00) that the Defendants have wrongfully obtained from GEICO by submitting, and causing to be submitted, hundreds of fraudulent charges for radiology services that allegedly were rendered to Insureds.

3.    The Defendants fall into the following categories:

(i)    Diagnostic Plus is a fraudulently incorporated New York professional medical corporation through which the radiology services purportedly were performed and billed to insurance companies, including GEICO. Diagnostic Plus nominally is owned on "paper" by Mani Ushyarov, D.O., but in actuality is owned and controlled by individuals and entities that are not licensed to practice medicine; and

(ii)    Mani Ushyarov, D.O. ("Dr. Ushyarov") is a physician who specializes in internal medicine, who is not a radiologist, and who is the nominal or "paper" owner of Diagnostic Plus.

2

(iii)    Yan Moshe a/k/a Yan Leviyev ("Moshe") and Humberto Romero ("Romero") are the individuals who secretly own and control Diagnostic Plus and who have done so since its unlawful incorporation in violation of New York law. Moshe and Romero are not and have never been licensed physicians.

(iv)    Yellowstone Medical Management, Inc. ("Yellowstone") is a New York corporation, which is owned and controlled by Romero, which purports to provide services to or on behalf of Diagnostic Plus. In fact, Yellowstone is used as a vehicle to illegally own and control Diagnostic Plus and to illegally siphon the profits of the medical professional corporation to Romero and Moshe.

4.    The Defendants' scheme began in October 2008 and has continued uninterrupted since that time. Upon information and belief, to implement their fraudulent scheme, Moshe, Romero and Yellowstone (collectively "the Management Defendants") recruited a licensed physician, Dr. Ushyarov, who was willing to sell his medical license to the Management Defendants so as to permit them to unlawfully incorporate Diagnostic Plus, hire independent contractors to read and interpret the radiology films and use the façade of a professional corporation to generate large scale fraudulent billing for radiology services to insurers.

5.    As discussed below, Defendants, at all relevant times, have known that (i) Dr. Ushyarov is not a radiologist and never truly owned or controlled Diagnostic Plus; (ii) Diagnostic Plus is and always has been secretly owned and controlled by individuals and entities that are not licensed to practice medicine; (iii) Dr. Ushyarov has never engaged in the practice of medicine through Diagnostic Plus; (iv) Diagnostic Plus is not the direct provider of the radiology services as such services have been provided by independent contractors; and (v) the financial and operational relationships between the Defendants were created to allow non-physicians to secretly own and control Diagnostic Plus and to illegally split fees by funneling the insurance proceeds paid by insurers (including GEICO), for services allegedly provided by Diagnostic

3

Plus, to non-physicians. As such, Diagnostic Plus never had any right to be compensated for the radiology services for which bills were submitted to GEICO and other insurers.[1]

6.      As a result of the Defendants' fraudulent scheme, GEICO has been billed approximately Three Million Six Hundred Thirty Six Thousand Dollars ($3,636,000.00) by Diagnostic Plus since its inception and has incurred damages exceeding Six Hundred Fifty Three Thousand Dollars ($653,000.00) in that same time period.

## THE PARTIES

### I.      Plaintiff

7.      Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co., are all Maryland corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue policies of automobile insurance in the State of New York.

### II.      Defendants

8.      Defendant Diagnostic Plus is a New York professional service corporation with its principal place of business in New York. Diagnostic Plus was fraudulently incorporated in New York on or about October 22, 2008.

9.      Defendant Dr. Ushyarov is a physician practicing internal medicine who has been licensed to practice medicine in New York since January 1996. Dr. Ushyarov resides in and is a citizen of the State of New York. Dr. Ushyarov serves as the nominal or "paper" owner of Diagnostic Plus which purports to provide radiology services to GEICO insureds despite the fact

---

[1] Every NF-3 form (i.e., bill) mailed to GEICO misrepresented and/or concealed material facts regarding the assertion that Diagnostic Plus was properly licensed and, therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law §5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12). In fact, Diagnostic Plus was never eligible for No-Fault benefits because the professional corporation was: (i) unlawfully incorporated, owned and/or controlled by non-physicians; (ii) engaged in unlawful fee-splitting with non-physicians, (iii) allegedly owned by a physician who did not practice medicine through the professional corporation, and (iv) billing for services provided by physicians having no employment relationship with the professional corporation.

that he is not a radiologist and incapable of competently reading and interpreting MRI studies. Dr. Ushyarov has never engaged in the practice of medicine through Diagnostic Plus since it was unlawfully incorporated on or about October 22, 2008.

10. Defendant Moshe resides in and is a citizen of the State of New York. Moshe is not and never has been licensed to practice medicine. Upon information and belief, Moshe and Romero secretly own and control Diagnostic Plus in contravention of New York law.

11. Defendant Romero resides in and is a citizen of the State of New York. Romero is not and never has been licensed to practice medicine. Upon information and belief, Romero and Moshe secretly own and control Diagnostic Plus in contravention of New York law.

12. Defendant Yellowstone is a New York corporation, which, upon information and belief, is owned and controlled by Romero and Moshe that purports to provide services to or on behalf of Diagnostic Plus. Yellowstone operates out of the same location as Diagnostic Plus and is used as a vehicle to illegally own and control Diagnostic Plus and to illegally siphon insurance proceeds from Diagnostic Plus to the Management Defendants.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

14. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Eastern District of New York is the District where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS COMMON TO ALL CLAIMS

I.    **An Overview of the No-Fault Laws**

15.    GEICO underwrites automobile insurance in the State of New York.

16.    New York's No-Fault laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay for and receive the medically necessary healthcare services that they require. Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101 et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65 et seq.) (collectively referred to herein as the "No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault Benefits") to Insureds.

17.    No-Fault Benefits include up to $50,000.00 per Insured for necessary expenses incurred for health care goods and services.

18.    An Insured can assign his or her right to No-Fault Benefits to the providers of healthcare services in exchange for those services. Pursuant to a duly executed assignment, a healthcare provider may submit claims directly to an insurance company and receive payment for necessary medical services rendered, using the claim form required by the New York State Department of Insurance (known as the "Verification of Treatment by Attending Physician or Other Provider of Health Service," or, more commonly, as an "NF-3").

19.    Pursuant to the No-Fault Laws, fraudulently incorporated professional service corporations are not eligible to bill for or receive No-Fault Benefits. Similarly ineligible are professional service corporations that are owned by doctors who do not practice through the corporation.

20.    The No-Fault Laws provide, in pertinent part:

6

> A provider of health care services is not eligible for reimbursement
> under section 5102(a)(1) of the Insurance Law if the provider fails
> to meet any applicable New York State or local licensing
> requirement necessary to perform such service in New York ....
> See 11 N.Y.C.R.R. § 65-3.16(a)(12) (emphasis provided).

21.    In New York, only a licensed physician may: (i) practice medicine; (ii) own or control a professional service corporation authorized to practice medicine; (iii) employ and supervise other physicians; or (iv) derive economic benefit from physician services. Furthermore, under the No-Fault Laws, healthcare service providers are not eligible to receive No-Fault Benefits if they engage in fee splitting with non-medical professionals, conduct that is prohibited by New York's Education Law.

22.    Additionally, New York law requires that the shareholders of a medical professional corporation be engaged in the practice of medicine through the professional corporation in order for it to be lawfully licensed. Under the No-Fault Laws, professional service corporations are not eligible to receive No-Fault Benefits if they are owned by physicians who do not engage in the practice of medicine through the professional corporation.

23.    Moreover, for a healthcare provider to be eligible to bill for and to collect charges from an insurer for healthcare services pursuant to N.Y. Ins. Law § 5102(a), it must be the actual provider of the service. Under the No-Fault Laws, a professional service corporation is not eligible to bill for services, or to collect for those services from an Insurer, where the services were rendered by persons who are not employees of the professional corporation, such as independent contractors.

24.    Pursuant to § 403 of the New York State Insurance Law, the NF-3s submitted by a healthcare provider to GEICO, and to all other insurers, must be verified by the healthcare provider subject to the following warning:

7

> Any person who knowingly and with intent to defraud any insurance
> company or other person files an application for insurance or statement of
> claim containing any materially false information, or conceals for the
> purpose of misleading, information concerning any fact material thereto,
> commits a fraudulent insurance act, which is a crime.

## II.     Diagnostic Plus' Ineligibility to Receive No-Fault Benefits

### A.     Ushyarov's Failure to Practice Medicine Through Diagnostic Plus

25.     Diagnostic Plus is owned on paper by Dr. Ushyarov and purports to operate from 65-55 Woodhaven Boulevard, Rego Park, New York.

26.     Beginning in or about October 2008, and continuing until the present day, the Management Defendants have masterminded and implemented a massive fraudulent scheme through which they have, using Diagnostic Plus, billed GEICO approximately Three Million Six Hundred Thirty Six Thousand Dollars ($3,636,000.00) for radiology services in less than three (3) years that Diagnostic Plus is not eligible to recover.

27.     To accomplish this scheme, the Management Defendants recruited Dr. Ushyarov, who serves as a mere "paper owner" of Diagnostic Plus.

28.     During the time that Dr. Ushyarov has been listed as the record owner of Diagnostic Plus, Dr. Ushyarov has been working full time, practicing internal medicine at the NYU Columbus Medical Center located in Rego Park, New York.

29.     Dr. Ushyarov does not personally treat or provide testing services to any patient of Diagnostic Plus, and does not read or interpret any MRI studies for Diagnostic Plus.

30.     Dr. Ushyarov does not supervise any of the treatment or testing services allegedly provided to patients of Diagnostic Plus.

31.     Dr. Ushyarov does not hire, supervise or train any of the radiologists that allegedly interpret the MRI studies of patients for Diagnostic Plus.

8

32.     In fact, not a single one of the thousands of bills that have been submitted to GEICO for reimbursement by Diagnostic Plus has been for services actually performed by Dr. Ushyarov. This is not surprising as Dr. Ushyarov is not a radiologist, he has not performed any medical work for Diagnostic Plus, he does not come to Diagnostic Plus' office, and he spends his time practicing internal medicine at a practice unrelated to Diagnostic Plus.

33.     Moreover, as a doctor practicing internal medicine, Dr. Ushyarov is not competent to either (i) interpret the MRI studies that are allegedly performed on GEICO Insureds, or (ii) supervise the interpretations of the MRI studies that are allegedly performed by the radiologists that are retained to work at Diagnostic Plus by the Management Defendants.

34.     In addition to his full time practice with the NYU Columbus Medical Center in Rego Park, Dr. Ushyarov has been listed as record owner of eight other medical providers (besides Diagnostic Plus), including, JADJ Medical, PC, Central Nassau Diagnostic Imaging, PC, New Hyde Park Imaging, PC, MU Medical, PC, Mani Medical, PC, Best Quality Medical, PC, Carver Medical, PC, and First Class Medical, PC, at various times.

35.     Dr. Ushyarov has essentially "sold" the use of his name and license to, among others, the Management Defendants who in this case use his license in connection with Diagnostic Plus despite the fact that Dr. Ushyarov has never actually engaged in the practice of medicine through Diagnostic Plus.

36.     Business Corporation Law §1507 makes clear that a physician shareholder of a medical professional corporation must be engaged in the practice of medicine through the professional corporation for it to be lawfully licensed. BCL § 1507 provides as follows:

**Issuance of shares**

A professional service corporation may issue shares only to individuals who are authorized by law to practice in this state a profession which such

> corporation is authorized to practice and who are or have been engaged in
> the practice of such profession in such corporation…or who will engage
> in the practice of such profession in such corporation within thirty days of
> the date such shares are issued….All shares issued, agreements made, or
> proxies granted in violation of this section shall be void.

37.     Legislative history confirms that the physician must not only be licensed to

practice but must also be engaged in the practice of medicine in a medical professional

corporation.  For example, in commenting on the proposed amendment to BCL § 1507 in 1971,

the State Education Department, stated:

> This bill amends the Business Corporation Law in relation to the operation
> of professional service corporations.    While this bill allows more
> flexibility in the ownership and transfer of professional service corporation
> stock, it maintains the basic concept of restricting ownership to
> professionals working within the corporation.

38.     Similarly, the New York Department of State commented that:

> Section 1507 currently limits issuance of shares in such corporation to
> persons licensed by this State to practice the profession which the
> corporation is authorized to practice and who so practice in such
> corporation or a predecessor entity.
>
> The bill would add a third category of person eligible to receive stock, one
> who will practice such profession "within 30 days of the date such shares
> are issued."

39.     New York's Department of Health was of the same opinion, commenting that:

> The bill would amend Article 15 of the Business Corporation Law
> pertaining to professional service corporations to allow the issuance of
> shares of individuals who will engage in the practice of the profession
> within 30 days of the date such shares are issued, in addition to those
> presently so engaged…. (Emphasis added.)

(Copies of the memoranda referenced in ¶¶ 37-39 above are collectively annexed to this

Complaint as Exhibit "1.")

40.     Dr. Ushyarov's failure to practice medicine through the professional corporation

as well as his failure and/or inability to supervise any of the radiologists who perform the

10

services compromises patient care and results in unnecessary testing, as Diagnostic Plus' operation is subject to the pecuniary interests of non-physicians as opposed to the independent medical judgment of a true doctor-owner.

**B.     The Fraudulent Incorporation and the Management Defendants' Operation and Control of Diagnostic Plus**

41.     Dr. Ushyarov has never been the true shareholder, director, or officer of Diagnostic Plus, and has never had any true ownership interest in or control over the professional corporation. True ownership and control over Diagnostic Plus has rested at all times entirely with the Management Defendants.

42.     The Management Defendants recruited Dr. Ushyarov, an internist, and "purchased" his medical license in order to do indirectly what they are forbidden from doing directly, namely to: (i) employ physicians and other licensed health care professionals; (ii) control their practices; and (iii) charge for and derive an economic benefit from their services.

43.     In order to circumvent New York law and to induce the Department of Education to issue certificates of authority permitting Diagnostic Plus to engage in the practice of medicine, the Management Defendants entered into a secret scheme with Dr. Ushyarov. In exchange for a designated salary or other form of compensation, Dr. Ushyarov agreed to falsely represent in the certificate of incorporation filed with the Department of Education in 2008 that he was the true shareholder, director and officer of Diagnostic Plus and that he truly owned, controlled and practiced through the professional corporation.

44.     Romero and Moshe, through their company, 65-55 Woodhaven Realty, LLC, own the building located at 65-55 Woodhaven Boulevard, Rego Park, New York, where Diagnostic Plus operates. Romero and Moshe, through their company, 65-55 Woodhaven Realty, LLC, also own the medical equipment used by Diagnostic Plus, including an Hitachi MRI machine, a CT

11

scanner, medical software, laser camera, and other equipment. Copies of a UCC Financing Statement and property documents confirming this ownership are annexed hereto as Exhibit "2." Thus, Romero and Moshe own and/or control both the medical equipment used by Diagnostic Plus and the physical space where Diagnostic Plus is located.

45. Using their ownership and control of the medical equipment and physical space, the Management Defendants force Diagnostic Plus to enter into exorbitant "equipment lease," "management," "marketing," "billing," "facility lease" and/or other financial arrangements. The net effect of the agreements and financial arrangements between the Management Defendants and Diagnostic Plus is to maintain Diagnostic Plus in a constant state of debt or subservient position to the Management Defendants, thereby enabling them to maintain total control over the professional corporation, its account receivables, and any revenues that might be generated therefrom.

46. Romero and Moshe conceal their true ownership and control of Diagnostic Plus, while simultaneously effectuating pervasive, total control over its operation and management, through the agreements and financial arrangements, which they use as a tool to permit the Management Defendants to: (i) control the day-to-day operations, exercise supervisory authority over, and illegally own Diagnostic Plus; (ii) control the rendition of and billing for healthcare services, and (iii) siphon most, if not all, of the revenues that were generated by the billings submitted to GEICO and other insurers through Diagnostic Plus.

47. Throughout the course of Dr. Ushyarov's relationship with the Management Defendants, all decision-making authority relating to the operation and management of Diagnostic Plus has been vested entirely with the Management Defendants.

48.     Dr. Ushyarov does not engage in the practice of medicine through Diagnostic Plus.

49.     Dr. Ushyarov does not supervise the provision of healthcare services by Diagnostic Plus.

50.     Dr. Ushyarov does not hire or supervise any of the employees of Diagnostic Plus.

51.     Dr. Ushyarov does not sign any of the bills sent out under the Diagnostic Plus name.

52.     Dr. Ushyarov does not review any of the bills sent out under the Diagnostic Plus name.

53.     Dr. Ushyarov does not know the actual number or amount of bills sent out under the Diagnostic Plus name and does not know the actual amount of revenues that are generated by the bills sent out under the Diagnostic Plus name.

54.     Dr. Ushyariv does not play any role in the billing or financial operations of Diagnostic Plus.

55.     Although Dr. Ushyarov is listed as the owner of Diagnostic Plus on the certificate of incorporation, he exercises no ownership or control over the professional corporation, its revenues, or its profits.  Instead, the day-to-day operations, all of the hiring, supervisory control, and true ownership of Diagnostic Plus rest in the hands of the Management Defendants.

56.     The building where Diagnostic Plus operates, 65-55 Woodhaven Boulevard, Rego Park, New York, has long been a haven for Moshe and Romero to conduct fraudulent schemes involving the illegal control of medical practices and the submission of fraudulent billing to New York automobile insurers.  Diagnostic Plus is just another in a long line of medical facilities, both at this location and others, which Moshe and Romero have fraudulently incorporated,

13

controlled in contravention of New York law, and used to siphon off millions of dollars of ill gotten profit.

57.    In fact, Moshe and Romero have been named as defendants in numerous actions commenced by insurance carriers for their illegal ownership and operation of medical corporations. For example, Moshe has been named as a defendant in (i) State Farm Mutual Automobile Insurance Company v. CPT Medical Services, PC, et. al., CV 04-5045 (ILG); (ii) Travelers Indemnity Company v. Liberty Medical Imaging Associates, PC, et. al., CV 07-2519 (CPS); and (iii) State Farm Mutual Automobile Insurance Company v. Bronx Healthcare Medical, P.C., Precise Acupuncture of NY, P.C., New Hyde Park Imaging, P.C. d/b/a U.S. Diagnostics and J. Martinez Medical Care, P.C., CV 08-4912 (LDW). In all these cases, it is alleged that laypersons and management companies received millions of dollars while the actual medical corporations received merely a fraction of the income derived from insurance proceeds. Copies of the Complaints filed in these actions are collectively annexed hereto as Exhibit "3."

58.    In the action brought by State Farm against, inter alia, New Hyde Park Imaging, P.C. d/b/a U.S. Diagnostics, Judge Leonard Wexler issued Judgments on February 26, 2009 declaring New Hyde Park Imaging, P.C. d/b/a U.S. Diagnostics (as well as two of the other named PC Defendants) ineligible to recover no-fault benefits from State Farm. Judge Wexler issued a judgment against the remaining PC Defendant on August 17, 2009. Copies of the Judgments are attached hereto as Exhibit "4."

59.    Moreover, Romero has been named as one of the defendants in State Farm Mutual Automobile Ins. Co. v. John McGee, et al., CV 10-3848 (ILG), for his illegal control of a medical corporation at the same location, 65-55 Woodhaven Boulevard, Rego Park, New York, where Diagnostic Plus is located. A copy of this Complaint is attached hereto as Exhibit "5."

This complaint alleges that the medical clinic located at 65-55 Woodhaven Boulevard, Rego Park, New York, is controlled by Romero and management companies known as Yellowstone Medical Management and HJR Management.

60.    The Management Defendants, in an effort to continue their schemes after GEICO and other New York automobile insurers catch on, repeatedly "swap" nominal owners and change the names of the professional corporations so that they can circumvent attempts to prevent them from profiting from their illegal control over medical corporations.

61.    The Management Defendants have "swapped" nominal owners and changed the names of the professional corporations at the 65-55 Woodhaven Boulevard, Rego Park, New York location where Diagnostic Plus is located.  In fact, Diagnostic Plus is not the first fraudulently incorporated MRI "practice" to be located at 65-55 Woodhaven Boulevard, Rego Park, New York.  Prior to Diagnostic Plus, the MRI practice operating at this location billed under the name Central Nassau Diagnostic Imaging, PC ("Central Nassau").

62.    Central Nassau initially operated under the nominal ownership of Dr. Allen Rothpearl.  After a purported "transfer" of ownership, the New York Department of State, Division of Corporations, listed Dr. Ushyarov as the owner of Central Nassau, and Dr. Rothpearl as the "managing agent."  A copy of the Division of Corporations' filing is annexed hereto as Exhibit "6."  As evidence that the Management Defendants control and treat the medical corporations as fungible, Central Nassau submitted billing to GEICO where the attached medical reports, assignment of benefits, and referrals/prescriptions used the name Diagnostic Plus. Copies of bills and reports evidencing Central Nassau billing as Diagnostic Plus are annexed hereto as Exhibit "7."  Moreover, Dr. Rothpearl is now listed as one of the reading radiologists at Diagnostic Plus (rather than the nominal owner).

63.    The Management Defendants no doubt compelled the "transfer" of Central Nassau from Dr. Rothpearl to Dr. Ushyarov and then the change of the MRI practice from Central Nassau to Diagnostic Plus.    This is consistent with the acts of Moshe and other management defendants when they illegally owned and operated New Hyde Park Imaging, P.C. d/b/a U.S. Diagnostics ("NHP"), an MRI facility which also was originally owned by Dr. Rothpearl. The management defendants there compelled the "sale" of NHP to Dr. Ushyarov, although the management defendants did not consult with Dr. Rothpearl in making the decision to transfer nominal ownership of NHP to Dr. Ushyarov.  (See copy of the Complaint in GEICO v. N.H.P. Imaging, P.C., CV 11-1166 (FB), annexed hereto as Exhibit "8.")  In fact, even though the account receivables for NHP potentially were worth millions of dollars, Dr. Ushyarov did not pay Dr. Rothpearl any significant amount of money to acquire the shares in NHP, did not invest any of his own money in order to own or operate NHP, and did not review any of NHP's books or records prior to obtaining Dr. Rothpearl's shares in NHP pursuant to the purported share transfer agreement.  See Exhibit "8."

64.    Like numerous professional corporations before, Diagnostic Plus is under the control and management of the Management Defendants who controlled and compelled the transfer of the MRI "practice" operating at 65-55 Woodhaven Boulevard, Rego Park, New York, from nominal owner Dr. Rothpearl to nominal owner Dr. Ushyarov.   Upon information and belief, Dr. Ushyarov did not pay Dr. Rothpearl any significant amount of money to acquire the MRI practice at this location, did not invest any of his own money in order to "own" Diagnostic Plus, and did not conduct any financial due diligence prior to becoming the purported owner of the MRI practice operating at this location.

65.     In sum, Dr. Ushyarov and Diagnostic Plus are beholden to the Management Defendants. The Management Defendants "hired" Dr. Ushyarov, who is not a radiologist; who has never performed any medical work for Diagnostic Plus; and who does not exercise any real control or ownership over the professional corporation.

66.     Dr. Ushyarov's loaning of his license to the Management Defendants for their use in connection with Diagnostic Plus is consistent with the fact that, in addition to his work with the NYU Columbus Medical Center in Rego Park, Dr. Ushyarov has been listed as purported owner of eight other medical providers, besides Diagnostic Plus, at various times.

67.     The ownership and control of Diagnostic Plus by the Management Defendants (who are non-physicians) compromises patient care and results in unnecessary testing, as the provision of health services by Diagnostic Plus is subject to the pecuniary interests of non-physicians as opposed to the independent medical judgment of a true doctor-owner.

C.     **Diagnostic Plus' Use of Independent Contractors**

68.     To be eligible for reimbursement under the No-Fault Laws, a professional corporation, as assignee, is entitled to payment from an insurer only if, *inter alia*, it is the actual, licensed provider of the health services billed for.

69.     A health care provider's use of independent contractors, rather than employees, to provide health services renders the health care provider ineligible to receive reimbursement under the No-Fault Laws.

70.     At all relevant times, the bills submitted by Diagnostic Plus included charges for services where Diagnostic Plus is not the direct provider of the healthcare services, but rather, the services were provided by independent contractors.

71.     Upon information and belief, at all relevant times, Diagnostic Plus did not and still does not have any radiologists on staff who are true, actual employees of Diagnostic Plus.

72.     On almost every bill submitted to GEICO by Diagnostic Plus, Allen Rothpearl, M.D. ("Dr. Rothpearl") or Joseph Leadon, M.D. ("Dr. Leadon") is identified as the "employee" who rendered the radiology services provided by Diagnostic Plus (i.e., review and interpretation of the radiology film). However, Dr. Rothpearl and Dr. Leadon are, upon information and belief, actually independent contractors, and not employees, of Diagnostic Plus.

73.     Dr. Rothpearl is no stranger to this type of scheme, as for years he has been linked to MRI facilities actually owned and controlled by Moshe. For example, Dr. Rothpearl owned Central Nassau, as referenced above, and then became a reading radiologist for Central Nassau. Further, Dr. Rothpearl was the nominal owner of NHP, as to which Judge Leonard Wexler issued a Judgment declaring NHP (as well as the other named PC Defendants) ineligible to recover no-fault benefits from State Farm. See Exhibit "4."

74.     Likewise, Dr. Leadon has been associated with Romero, Moshe and their fraudulent practices. Dr. Leadon was an "employee" of Central Nassau, as referenced above. In fact, Dr. Leadon performed the same services for Central Nassau as he purports to for Diagnostic Plus. See Exhibit "7." Likewise, Dr. Leadon has been an "employee" of I.D.F. Medical Diagnostic, P.C. ("IDF"). This MRI provider replaced NHP. IDF is owned "on paper" by Dr. Bhupinder Sawhney, who is not a licensed radiologist. Not surprisingly, the MRI's for IDF are interpreted by Dr. Leadon and Dr. Rothpearl. Copies of bills from IDF are annexed hereto as Exhibit "9."

75.     Neither Dr. Ushyarov nor any one else on behalf of Diagnostic Plus supervises Dr. Rothpearl or Dr. Leadon's services or evaluates their job performance.

76.     Dr. Rothpearl and Dr. Leadon do not have set work hours or work days with respect to their work for Diagnostic Plus.

77.     Dr. Rothpearl's and Dr. Leadon's review and interpretation of the MRI films is not done on-site in Rego Park where Diagnostic Plus is located.

78.     Upon information and belief, neither Dr. Rothpearl nor Dr. Leadon have a set rate of hourly pay and are, instead, paid by Diagnostic Plus based on the number of films that they read or interpret.

79.     Moreover, as established by their association with multiple facilities related to Moshe and Romero, neither Dr. Leadon's nor Dr. Rothpearl's services are exclusive to Diagnostic Plus.

80.     In fact, Dr. Rothpearl generally has been associated with numerous facilities, including Central Radiology Services, PC, Beech Imaging and Diagnostic, PC, Rockaway Imaging & Diagnostic, PC, Complete Radiology Reading Services, PLLC, New Ocean Radiology Associates, PC, Signature Radiology, PC, Kings County Radiology Services, PC, Allen Rothpearl, MD, PC, South Queens Imaging, PC, Parkway Imaging and Diagnostics, PC, IDF Medical Diagnostics, PC, Patchogue Open MRI, PC, Innovative View Medical, PC, New Hyde Park Imaging, PC, Doshi Diagnostic Imaging Services, PC, Old Country Road Imaging & Diagnostic, PC, Medical Imaging Center of New Jersey, Island Musculoskeletal Care MD, PC, Baldwin Medical Services, PC, and Diagnostic Plus, while Dr. Leadon has been associated with, at least, Central Nassau, Parkway Imaging and Diagnostic, PC, IDF Medical Diagnostics, PC, and Diagnostic Plus.

81.     All of the aforementioned is indicia of Dr. Rothpearl and Dr. Leadon's status as independent contractors to Diagnostic Plus.

19

82.     Diagnostic Plus billed GEICO for radiology services as if they were provided by actual employees of Diagnostic Plus to make it appear as if the services were eligible for reimbursement.  Defendants' misrepresentations were consciously designed to mislead GEICO into believing that it was obligated to pay Diagnostic Plus, when, in fact, it was not.

83.     Because Diagnostic Plus is not the direct provider of the healthcare services that were billed to GEICO, as the services provided were rendered by independent contractors, Diagnostic Plus was ineligible to receive reimbursement for those services under the No-Fault Laws.  Accordingly, GEICO is entitled to recover from Defendants all monies paid by GEICO to Diagnostic Plus pursuant to the No-Fault Laws for any and all services not performed by actual employees of Diagnostic Plus.

**III.     The Fraudulent NF-3 Forms Submitted to GEICO**

84.     To support the fraudulent radiology charges, statutorily prescribed claim forms for No-Fault Benefits (i.e., the NF-3 Form) have been consistently submitted to GEICO by and on behalf of the Defendants since October 2008 seeking payment for services for which Diagnostic Plus is ineligible to receive payment.

85.     The NF-3 forms submitted to GEICO, by and on behalf of Diagnostic Plus, are false and misleading in the following material respects:

      (i)     The NF-3 forms uniformly misrepresented to GEICO that Diagnostic Plus was lawfully licensed and, therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law §5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12).  In fact, Diagnostic Plus was not properly licensed in that it is a medical professional corporation that was unlawfully incorporated and which in reality, has been owned and controlled by the Management Defendants who are not physicians and who owned and controlled Diagnostic Plus for their sole economic benefit, while designating Dr. Ushyarov as the "nominal" or "paper" owner.

      (ii)     The NF-3 forms uniformly misrepresented to GEICO that Diagnostic Plus was lawfully licensed and, therefore, eligible to receive No-Fault Benefits

pursuant to Insurance Law §5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12). In fact, Diagnostic Plus was not properly licensed in that it is a medical professional corporation that is owned by a physician that did not actually practice medicine through the professional corporation and was not capable of doing so.

(iii)   The NF-3 forms uniformly misrepresented to GEICO that Diagnostic Plus was lawfully licensed and, therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law §5102(a)(1) and 11 N.Y.C.R.R. §65-3.16(a)(12). In fact, Diagnostic Plus was not properly licensed in that it is a medical professional corporation that engaged in unlawful fee splitting with the Management Defendants who are not physicians.

(iv)   The NF-3 forms uniformly misrepresented to GEICO that Diagnostic Plus was the direct provider of the healthcare services and that the services were provided by employees, and, therefore, Diagnostic Plus was eligible to receive No-Fault Benefits pursuant to Insurance Law §5102(a)(1) and 11 N.Y.C.R.R. §65-3.16(a)(12). In fact, Diagnostic Plus' services were provided by independent contractors having no genuine employment relationship with Diagnostic Plus, rendering it ineligible to receive reimbursement for those services under the No-Fault Laws.

(Representative samples of the fraudulent bills are attached hereto as Exhibit "10.")

## IV.   The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance

86.   The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the radiology services and the submission of charges to GEICO.

87.   To induce GEICO to promptly pay the fraudulent charges for the radiology services, the Defendants have systemically concealed their fraud and have gone to great lengths to accomplish this.

88.   Specifically, they knowingly have misrepresented and concealed facts related to Diagnostic Plus in an effort to prevent discovery that the professional service corporation was unlawfully incorporated, owned and controlled by non-medical professionals and engaged in fee-splitting. In addition, Defendants knowingly have misrepresented and concealed facts related to

the employment status of the radiologists who actually rendered the services in an effort to prevent discovery that these individuals were not genuine employees of Diagnostic Plus.

89.   The Defendants have hired one or more attorneys to pursue collection of the fraudulent charges from GEICO and other insurers.  These attorneys routinely file expensive and time-consuming litigation against GEICO and other insurers if the charges are not promptly paid in full.

90.   GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days.  The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations described above, were designed to and did cause GEICO to rely upon them.  As a result, GEICO has incurred damages of more than Six Hundred Fifty Three Thousand Dollars ($653,000.00) based upon the fraudulent charges representing payments made by GEICO to Diagnostic Plus since October 2008.

91.   Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraud from GEICO, GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

## AS AND FOR THE FIRST CLAIM FOR RELIEF
### Against All Defendants
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

92.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 91 above.

93.   There is an actual case in controversy between GEICO and the Defendants regarding approximately One Million Five Hundred Thousand Dollars ($1,500,000.00) in fraudulent billing for radiology services that has been submitted to GEICO.

94.     Diagnostic Plus has no right to receive payment for any pending bills submitted to GEICO because it was fraudulently incorporated and is owned and controlled by persons not licensed to practice medicine in New York State and, therefore, ineligible to seek or recover No-Fault Benefits.

95.     Diagnostic Plus has no right to receive payment for any pending bills submitted to GEICO because Diagnostic Plus is owned "on paper" by an internist who has never engaged in the practice of medicine through the professional corporation and, therefore, ineligible to seek or recover No-Fault benefits;

96.     Diagnostic Plus has no right to receive payment for any pending bills submitted to GEICO because the professional corporation is engaged in unlawful fee-splitting with non-physicians.

97.     Diagnostic Plus has no right to receive payment for any pending bills because the radiologists who actually rendered the services billed for are independent contractors who have no genuine employment relationship with Diagnostic Plus.

98.     Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that:

>    (i)     Diagnostic Plus is fraudulently incorporated and owned and controlled by non-medical professionals and, therefore, was never eligible to seek or recover No-Fault benefits;
>
>    (ii)    Diagnostic Plus is owned on paper by a physician who has never engaged in the practice of medicine through the professional corporation, thus rendering Diagnostic Plus ineligible to seek or recover No-Fault benefits;
>
>    (iii)   Diagnostic Plus is engaged in unlawful fee splitting with non-medical professionals and, therefore, was never eligible to seek or recover No-Fault benefits; and
>
>    (iv)    Diagnostic Plus improperly bills for services provided by radiologists who are independent contractors and not genuine employees of Diagnostic

Plus, thus rendering Diagnostic Plus ineligible to seek or recover No-Fault benefits for these services.

### AS AND FOR THE SECOND CLAIM FOR RELIEF
**Against Dr. Ushyarov and the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

99. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 98 above.

100. Diagnostic Plus Medical, P.C. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

101. Dr. Ushyarov, Romero, Moshe and Yellowstone Medical Management, Inc. have knowingly conducted and/or participated, directly or indirectly, in the conduct of Diagnostic Plus' affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. §1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payment for radiology services that Diagnostic Plus was not eligible to receive under the No-Fault Laws because: (i) it is unlawfully incorporated and owned and controlled by non-physicians; (ii) owned "on paper" by a physician who has never engaged in the practice of medicine through the professional corporation, (iii) bills for services performed by independent contractors having no genuine employment relationship with Diagnostic Plus, and (iv) engages in fee-splitting with non-physicians. A chart summarizing a representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint, is annexed hereto as Exhibit "11."

102. The predicate acts of mail fraud are the regular way in which Dr. Ushyarov, Romero, Moshe and Yellowstone Medical Management, Inc. operate Diagnostic Plus, insofar as Diagnostic Plus never has been eligible to bill for or collect No-Fault Benefits, and acts of mail

24

fraud therefore are essential in order for Diagnostic Plus to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity.

103. The Defendants continue to submit and/or attempt collection on the fraudulent billing.

104. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least Six Hundred Fifty Three Thousand Dollars ($653,000.00) pursuant to the fraudulent bills submitted by the Defendants through Diagnostic Plus since October 2008.

105. By reason of its injury, GEICO is entitled to treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### AS AND FOR THE THIRD CLAIM FOR RELIEF
### Against Dr. Ushyarov and the Management Defendants
### (Violation of RICO, 18 U.S.C. § 1962(d))

106. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 105 above.

107. Diagnostic Plus Medical, P.C. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

108. Dr. Ushyarov, Romero, Moshe and Yellowstone Medical Management, Inc. are employed by and/or associated with the Diagnostic Plus Enterprise.

109. Dr. Ushyarov, Romero, Moshe and Yellowstone Medical Management, Inc. knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Diagnostic Plus Enterprise's affairs, through a pattern of

racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit thousands of fraudulent bills to GEICO and other insurers. These acts of mail fraud include, but are not limited to, those that are described in the chart annexed hereto as Exhibit "11." Each such mailing was made in furtherance of the mail fraud scheme.

110. Dr. Ushyarov, Romero, Moshe and Yellowstone Medical Management, Inc. knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

111. GEICO has been injured in its business and property by reason of the above-described conduct of Dr. Ushyarov, Romero, Moshe and Yellowstone Management, Inc. in that it has paid at least Six Hundred Fifty Three Thousand Dollars ($653,000.00) pursuant to the fraudulent bills submitted by the Defendants through Diagnostic Plus since October 2008.

112. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**AS AND FOR THE FOURTH CLAIM FOR RELIEF**
**Against All Defendants**
**(Common Law Fraud)**

113. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 112 above.

114. The Defendants made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills seeking payment for radiology services.

115.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Diagnostic Plus is properly licensed and, therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-medical professionals; (ii) in every claim, the representation that Diagnostic Plus is properly licensed and, therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is owned on paper by a physician who never engaged in the practice of medicine through the professional corporation; (iii) in every claim, the representation that the services provided by Diagnostic Plus were provided by genuine employees of Diagnostic Plus, when, in fact, Diagnostic Plus' radiology services are provided by independent contractors; and (iv) in every claim, the representation that Diagnostic Plus is properly licensed and, therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in the illegal splitting of fees with non-physicians.

116.    The Defendants made false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted by Defendants that were not compensable under the No-Fault Laws.

117.    GEICO justifiably relied on the Defendants' false and fraudulent representations, and as a proximate result has incurred damages of more than Six Hundred Fifty Three Thousand Dollars ($653,000.00) based upon the fraudulent charges.

118.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

119.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## AS AND FOR THE FIFTH CLAIM FOR RELIEF
### Against All Defendants
### (Unjust Enrichment)

120.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 119 above.

121.    As set forth above, the Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

122.    When GEICO paid the bills and charges submitted by or on behalf of Diagnostic Plus for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

123.    The Defendants have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

124.    The Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

125.    By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than Six Hundred Fifty Three Thousand Dollars ($653,000.00).

## JURY DEMAND

126.    Pursuant to Federal Rule of Civil Procedure 38(b), GEICO demands a trial by jury.

**WHEREFORE**, Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co., demand that a Judgment be entered in their favor and against the Defendants, as follows:

A.    On the First Cause of Action against all defendants, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Diagnostic Plus has no right to receive payment for any pending bills submitted to GEICO;

B.    On the Second Cause of Action against Dr. Ushyarov, Romero, Moshe and Yellowstone Medical Management, Inc., compensatory damages in favor of GEICO an amount to be determined at trial but in excess of Six Hundred Fifty Three Thousand Dollars ($653,000.00), together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

C.    On the Third Cause of Action against Dr. Ushyarov, Romero, Moshe and Yellowstone Medical Management, Inc., compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of Six Hundred Fifty Three Thousand Dollars ($653,000.00), together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

D.    On the Fourth Cause of Action against all Defendants, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of Six Hundred Fifty Three Thousand Dollars ($653,000.00), together with punitive damages, costs, and interest;

     E.      On the Fifth Cause of Action against all Defendants, an award to GEICO of an

amount to be determined at trial by which Defendants have been unjustly enriched, but in excess

of Six Hundred Fifty Three Thousand Dollars ($653,000.00), plus costs and interest; and

     F.      such other and further relief as this Court deems just and proper.

Dated:      Uniondale, New York
             July 26, 2011

                    RIVKIN RADLER LLP

                    By: _____

                        Michael A. Sirignano (MS 5263)
                        Barry I. Levy (BL 2190)
                        Ryan Goldberg (RG 7570)
                        926 RXR Plaza
                        Uniondale, New York 11556-0926
                        Telephone:   (516) 357-3000
                        Facsimile:   (516) 357-3333

                        *Counsel for Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co.*